UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CIVIL ACTION NO. 12-118-KKC

DEGARY L. BURBRIDGE                                                                 PLAINTIFF

V.                          **MEMORANDUM OPINION AND ORDER**

COMMISSIONER OF SOCIAL SECURITY                                    DEFENDANT

\* \* \* \* \* \* \* \* \* \* \*

This matter is before the court upon cross-motions for summary judgment on Degary Burbridge's appeal of the Commissioner's denial of his application for Supplemental Security Income ("SSI"). The court will grant the Commissioner's motion (R.11) and deny Burbridge's motion (R. 10) because substantial evidence supports the administrative decision.

At the time of his application for SSI, Degary Burbridge was a 33-year-old male with a limited education and difficulties in reading and writing. AR 30, 51.  School records from 1994-1995 indicate he attended a special education program in high school.  AR 223-234 (Ex. 14E). Prior to the alleged disability, he worked in food service as a cook. AR 53.  He also reported serving a prison term from 2006-2008 for selling narcotics.  He alleged disability beginning on February 2, 1980, due to intelligence deficits, mood disorder, depression, asthma, and seizure disorder. AR 48.  Burbridge filed his claim for SSI on October 8, 2008. AR 131.  It was denied initially on January 28, 2009, and upon reconsideration on April 29, 2009. AR 101, 104.  A hearing was held on August 11, 2010, and the court heard testimony from the claimant, his fiancée Lisa Hinkston, and an impartial vocational expert George Parsons.  Thereafter, Administrative Law Judge ("ALJ") Christopher McNeil determined that Burbridge was not disabled. AR 18-32.  Under the traditional five-step analysis, *see Preslar v. Sec'y of Health &*

1

*Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); *see* 20 C.F.R. § 404.1520 (1982), the ALJ determined that Burbridge had not engaged in substantial gainful activity since October 8, 2008, the application date, AR 23; that he had severe impairments, including seizure disorder, mood disorder, borderline intellectual functioning, and personality disorder, *Id*; that his impairments or combination of impairments did not meet or equal one of the listed impairments, AR 24; that he had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with some specified non-exertional limitations, such as limitations to simple repetitive tasks with only occasional contact with others, AR 26; and that based on his RFC jobs existed in the national economy that he could perform such as janitorial work, kitchen helper, and equipment cleaner, AR 31, 81. The ALJ thus denied his claim for SSI on October 15, 2010. AR 20-32. The Appeals Council denied Burbridge's request for review on March 21, 2012, AR 1-3, and he commenced this action.

Burbridge challenges the ALJ's ruling on the following grounds: (1) the ALJ erred in his determination that the claimant did not meet the Listing in section 12.05(C) or (D) of the regulations for mental retardation; and (2) the ALJ erred in failing to follow SSR 96-6p. In the context of his two challenges Burbridge argues the ALJ should have given controlling weight to the psychological reviewing opinion he sought from Dr. Linda Hartmann.

The ALJ did not err in finding that Burbridge did not meet the listing in section 12.05C or 12.05D of the regulations for mental retardation. Listing 12.05 provides in pertinent part:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *ie.*, the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

2

…

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional significant work-related limitation of function.
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70 and at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, subpart P, appendix 1.

To meet the listing for mental retardation an impairment must satisfy both the diagnostic description in the introductory paragraph and one of the sets of criteria, such as (C) or (D) referenced above. Here, the ALJ determined that Burbridge had the impairment of borderline intellectual functioning, not mental retardation. AR 25. He reviewed the psychological testing report from Dr. Richard Sexton, the psychologist who administered the Wechsler Adult Intelligence Test ("WAIS-IV") in 2008 at the agency's request. The WAIS-IV showed that Burbridge had a full scale IQ score of 64 and "this would suggest that he was functioning in the mild range of mental retardation overall." *See* AR 297-303 (Ex. 6F). Because the performance and IQ scores are within the listing range, this requirement is met. However, IQ scores alone are insufficient to meet 12.05(C) or (D) requirements. *Blanton v. Soc. Sec. Admin.*, 118 Fed. App'x 3, 7 (6th Cir. 2004).

In addition to the requisite IQ score, Burbridge must also demonstrate significantly sub-average general intellectual functioning with deficits in adaptive functioning which manifested prior to age 22 as specified in the diagnostic description of listing 12.05. Here, the parties dispute the ALJ's finding that the evidence failed to establish deficits in adaptive functioning.

3

Substantial evidence in the record supports the ALJ's decision that Burbridge is not so limited in adaptive functioning as to meet the Listing in 12.05. Adaptive skills are social, communicative, and daily-living skills. *See Heller v. Doe*, 509 U.S. 312, 329 (1993). The claimant's activities will be evaluated for "their independence, appropriateness, effectiveness, and sustainability," to determine whether the claimant is "capable of initiating and participating in activities independent of supervision or direction." 20 C.F.R. Part 404, Subpart P., App. 1, Listing 12.00(C).

Dr. Sexton found Burbridge able to care for his personal hygiene, demonstrate adequate social skills, and establish a workable relationship with the examiner. AR 299. Moreover, he found that Burbridge was capable of performing activities of daily living such as cooking and cleaning. In addition to Dr. Sexton's consultative exam, the ALJ also reviewed the reports of non-examining state agency mental health experts Dr. Finnerty (Exhibit 7F) and Dr. Chambly (Exhibit 13F). Dr. Finnerty determined that that he was only "moderately impaired" in concentration, socialization, and adaption. AR 307. Notably, Finnerty found that Burbridge was able to do simple math, some cooking, cleaning and laundry, and he was able to take the bus and reported to be "living with a friend."

Burbridge argues the ALJ failed to give controlling weight to the psychological opinion of Dr. Linda Hartmann, a clinical psychologist and neuropsychologist that reviewed Dr. Sexton's report upon Burbridge's request. *See* AR 470-472 (Ex. 20F). Her report indicates that Burbridge would have met both Listing 12.05C and 12.05D. Her report makes the assumption that Burbridge's inclusion in a special education program in high school implies that his IQ functioning was below 70 prior to age 22 as required by the introductory paragraph to the Listing. The ALJ rejected this assumption and emphasized that Listing 12.05 requires

4

"significantly subaverage general intellectual functioning with deficits in *adaptive* functioning initially manifested during the developmental period." (emphasis added). In rejecting her opinion, the ALJ concluded that the evidence failed to establish deficits in adaptive functioning as required by the Listing. AR 26.

With regard to a work-related limitation as required under Listing 12.05C, substantial evidence supports the ALJ's determination that Burbridge had greater than alleged functioning. He was assigned a GAF score of 60 which reflects only moderate mental restrictions. Dr. Sexton opined that the claimant could perform simple, repetitive 2-3 step tasks in a low stress environment (Ex. 6F) and the ALJ incorporated these restrictions in his RFC determination.

With regard to Listing 12.05D, in addition to the requisite IQ score, Burbridge must also demonstrate at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. Substantial evidence supports the ALJ's conclusion that he did not have any of these.

Burbridge's daily living activities show greater than alleged functioning. He reported taking care of his own personal needs such as cooking, cleaning, and ironing. He reported playing with his children. In social functioning, Burbridge was found to have only moderate difficulties. AR 24. He reported talking on the phone and attending church every Sunday. Regarding his concentration, persistence, or pace, he was found to have only moderate difficulties. Although his school records he indicate he attended special education programs for at least one year (Exhibit 14E), the consultative examiner found his ability to understand, recall and carry out simple instructions was only mildly impaired by his borderline intelligence. AR 303. There is no evidence of episodes of decompensation of extended duration. Medical records

from January 2009 do reflect a possible suicide attempt following his release from prison while he was homeless. *See* Exhibit 11F. However, the ALJ determined that if this was an episode of decompensation it was not extended or repeated. AR 25. There are no records reflecting that Burbridge has been prescribed medication for his depression. Therefore, the ALJ appropriately determined that Burbridge did not meet Listing 12.05D.

At first glance this was a fairly close question given Dr. Hartmann's subsequent diagnostic review; however, the ALJ gave good reasons for rejecting her opinion and she did not have the benefit of examining Burbridge. "An ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness' demeanor and credibility." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The court cannot try the case *de novo* or decide questions of credibility, even if substantial evidence would support the opposite conclusion. *See Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 648 (6th Cir. 2011). The court finds that substantial evidence supports the ALJ's determination that Burbridge's impairments did not satisfy listing 12.05C or 12.05D.

In his second issue, Burbridge argues the ALJ failed to seek updated expert analysis in violation of Social Security Ruling 96-6p. SSR 96-6p "requires that the ALJ obtain an updated medical opinion only when the ALJ believes that the evidence could change a consultant's finding that the impairment is not equivalent to a listed impairment." *Courter v. Comm'r of Soc. Sec.*, WL 1592750 at *9 (6th Cir. May 7, 2012).

Contrary to Dr. Hartmann's opinion, the claimant's school records reflecting that he attended a special education program do not establish that he qualifies as mentally retarded. The ALJ stated that he reviewed the entire record, which included the school records and Dr.

Hartmann's opinion, and explicitly concluded that they did not support the claimant's argument that he met or equaled the Listing in Section 12.05.  Moreover, he specifically rejected Dr. Linda Hartmann's opinion, finding the opinion of Dr. Sexton, who actually examined the claimant, more persuasive.  AR 25.  The ALJ also noted in his opinion that he considered all of the evidence in accordance with SSR 96-6p.  *Id*. at 26.  The ALJ therefore was not required to obtain an updated medical opinion from an additional medical expert as Burbridge appears to suggest because substantial evidence supports the ALJ's findings.

    The ALJ properly applied the relevant legal standards and his decision is supported by substantial evidence.  Accordingly,

    **IT IS ORDERED** that Burbridge's motion (R. 10) is **DENIED**.

    **IT IS FURTHER ORDERED** that the Commissioner's motion (R. 11) is **GRANTED.**

    The court will enter a separate judgment.

    Dated this 29th day of March, 2013.

Signed By:
*Karen K. Caldwell*
United States District Judge